# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: BATY DEVELOPMENT GROUP, LLC,<br><br>*Debtor.*<br><br>---<br><br>GARNEY COMPANIES, INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>BATY DEVELOPMENT GROUP, LLC,<br><br>*Defendant.* | Case No. 304-15453<br>Chapter 11<br><br>Hon. Keith M. Lundin<br><br><br><br>Adv. No. 305-0602 |

## MEMORANDUM

The issue is whether funds committed by the Metropolitan Government of Nashville and Davidson County through its Department of Water and Sewage Services to Baty Development Group, LLC, in connection with water main Project No. 03-WL-34 are held in trust for the benefit of Plaintiff, Garney Companies, Inc., or are property of the Baty Chapter 11 estate. TENN. CODE ANN. § 66-34-205(a) creates a statutory trust recognized by the Sixth Circuit in *Selby v. Ford Motor Co.*, 590 F.2d 642 (6th Cir. 1979). Metro holds the funds in trust for the benefit of Plaintiff, the funds are not estate property and Plaintiff is entitled to summary judgment. The following are findings of fact and conclusions of law. FED. R. BANKR. P. 7052.

# FACTS

Baty Development Group, LLC ("Baty") is the owner and developer of an urban condominium project know as The Row at 31st (the "Property"), located at 208 31st Avenue N., Nashville, Tennessee. Baty filed Chapter 11 on December 30, 2004.

Baty entered into two prepetition contracts for construction of a water main extension to the Property. A Construction Agreement dated October 20, 2003, required Plaintiff, Garney Companies, Inc., to install approximately 2,500 linear feet of 12-inch public water main, extending along 31st Avenue North from the 12-inch water main in Parthenon Avenue to the end of an existing 10-inch water main in West End Circle. This was designated Metro Project No. 03-WL-34. Total projected cost was $215,031.00. Actual price for work performed by Garney was $218,419.14. Project No. 03-WL-34 is located entirely within the public rights of way on 31st Avenue North, Parthenon Avenue and West End Circle.

On November 18, 2003, Baty entered into a Participation Agreement with the Metropolitan Government of Nashville and Davidson County through the Metropolitan Department of Water and Sewerage Services ("Metro"). Subject to approval by city council, Metro agreed "to pay for the lesser of 85% of the installation cost or $190,000" for Project No. 03-WL-34. Under the Participation Agreement, Metro would remit its share of funding to Baty after the water main was accepted by Metro and deeded from Baty to Metro. Baty agreed to "be responsible for all costs associated with this project not funded by Metro." Participation Agreement at 1.

On February 18, 2004, the Metropolitan Government of Nashville and Davidson County passed Ordinance No. BL2004-133. This Ordinance authorized Metro to participate

with Baty on Project No. 03-WL-34. The Ordinance acknowledged that Baty would "pay for all costs associated with this project not funded by Metro." Ordinance No. BL2004-133 (Feb. 18, 2004).

Project No. 03-WL-34 was completed by Garney on May 28, 2004. Despite demands, Baty never paid Garney. In July 2004, Metro provided Baty with a Deed of Conveyance to transfer the water main extension to Metro. Baty did not transfer the water main to Metro prior to filing Chapter 11. Not surprisingly, Metro has not remitted to Baty the funds committed under the Participation Agreement. Post petition, Metro provided Baty with revised forms that would transfer the water main to Metro, satisfying the conditions precedent under the Participation Agreement. Upon execution of these forms, Metro will release the Project funds to Garney.

On cross motions for summary judgment, Garney seeks a declaration that the $185,656.27 committed by Metro in connection with Project No. 03-WL-34 is held in trust under TENN. CODE ANN. § 66-34-205(a), Tennessee's Prompt Pay Act. Garney contends the Metro funds did not become property of the Baty Chapter 11 estate. Garney relies on *Selby v. Ford Motor Co.*, 590 F.2d 642 (6th Cir. 1979); *Huizinga v. United States*, 68 F.3d 139 (6th Cir. 1995); and *Serio v. Edmondson (In re American Resources, Inc.)*, Case No. 03-11702 (M.D. Tenn. Aug. 20, 2004). Garney asks the court to direct Baty, under 28 U.S.C. § 2202 to transfer the water main to Metro so that Metro will disburse the funds to Garney.

3

Baty[1] disputes whether the Prompt Pay Act creates a statutory trust that deflects the Metro funds from this Chapter 11 estate. Baty argues that the Metro funds are not sufficiently segregated. Because there was no written agreement between Baty and Garney that the Metro funds would be used to pay Garney, Baty concludes that the Prompt Pay Act does not apply. In the alternative, Baty argues that the complaint fails to join necessary parties claiming liens with respect to the Property.

## DISCUSSION

All legal or equitable interests of the debtor become property of the Chapter 11 estate. *See* 11 U.S.C. § 541(a)(1). The debtor's interests in property are typically determined by state law. *See, e.g.*, *Butner v. United States*, 440 U.S. 48, 54, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979). Under § 541(d) of the Bankruptcy Code,[2] excluded from the bankruptcy estate is any "property of others in which the debtor has some minor interest such as a lien or bare legal title." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.10, 103 S. Ct.2309, 76 L. Ed. 2d 515 (1983). *See also XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1449 (6th Cir. 1994) (recognizing that the

---

[1] Baty's motion for summary judgment was not timely filed pursuant to the Pretrial Order. Baty's motion was filed a day late. Its Statement of Undisputed Facts was filed seven days late. The court declines Garney's invitation to deny the debtor's motion for summary judgment as a sanction. Discretion in such matters is tempered by a clear policy in favor of decisions on the merits; the severe sanction of denial of a motion or dismissal must be based on misconduct that demonstrates an "'intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings.'" *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 591 (6th Cir. 2001) (citation omitted). There is no evidence of prejudice to Garney or misconduct by Baty.

[2] 11 U.S.C. § 541(d) provides:

[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

4

difference between express trusts and constructive trusts impacts the extent of estate property in bankruptcy).

Tennessee Code Annotated § 66-34-205(a), the Prompt Pay Act, provides in part:

**Sums held in trust**

(a) *Any sums* allocated by the owner or provided or *committed to the owner by a third party* which are *intended to be used as payment* for improvements made to real property by virtue of a written contract between the owner and the contractor *shall be held by the* owner or *third party in trust for the benefit and use of the contractor* and shall be subject to all legal and equitable remedies.

TENN. CODE ANN. § 66-34-205(a) (emphasis added).

In *Selby v. Ford Motor Co.*, 590 F.2d 642 (6th Cir. 1979), the Sixth Circuit addressed a similar statute, the Michigan Builders Trust Fund Act, in preference litigation under the former Bankruptcy Act. The "Michigan Act creat[ed] a security device in the form of a 'trust fund' for the benefit of the owner and subcontractors on construction projects[.]" *Selby,* 590 F.2d at 643.[3] "The purpose of the statute [was] to protect the owner and those whose labor and materials ma[de] the performance of a construction contract possible and [gave] rise to the owner's obligation to pay." *Selby,* 590 F.2d at 644.

To resolve the competing rights of the bankrupt contractor's unpaid creditors and subcontractors that were paid during the preference periods, the court in *Selby* looked to

---

[3] The Michigan statute read:

In the building construction industry, the building contact fund paid by any person to a contractor . . . shall be considered by this act to be a Trust fund, for the benefit of ((1)) the person making the payment, a (and (2)), contractors, laborers, subcontractors or materialmen, and the contractor . . . shall be considered the Trustee of all funds so paid to him for building construction purposes.

*Selby,* 590 F.2d at 643-44 (quoting MICH. COMP. LAWS ANN. § 570.151 (1967)).

5

"the language and purpose of the Bankruptcy Act in relationship to property rights created under state law, the practices of the construction industry and the problems of the industry which the statutory trust was designed to remedy." *Selby,* 590 F.2d at 645. The Sixth Circuit concluded that the preference action failed because "a Michigan building contractor does not have sufficient beneficial interest in funds impressed with the statutory trust to constitute his 'property' under the Bankruptcy Act." *Id.*

> Statutory provisions which create a trust for the benefit of a creditor continue to be recognized under the Bankruptcy Code as they were under the Bankruptcy Act. The legislative history of § 541 indicated as follows:
>
> This section [§ 541] and proposed 11 U.S.C. 545 also will not affect various statutory provisions that give a creditor of the debtor a lien that is valid outside as well as inside bankruptcy, or that creates [sic] a trust fund for the benefit of a creditor of the debtor.

*In re Universal Trend, Inc.*, 114 B.R. 936, 940 (Bankr. N.D. Ohio 1990) (citations omitted); *see also United Parcel Serv., Inc. v. Weben Indus.,* 794 F.2d 1005 (5th Cir. 1986) (trust found under Georgia Law); *Greenwald v. Square D. Co. (In re Trans-End Tech., Inc.)*, 228 B.R. 181 (Bankr. N.D. Ohio. 1998); *In re Dunwell Heating & Air Conditioning Contractors Corp.,* 78 B.R. 667 (Bankr. E.D.N.Y. 1987) (trust found under New York law); *but see United Pacific Ins. Co. v. Laurel County,* 805 F.2d 628 (6th Cir. 1986), *cert. denied*, 481 U.S. 817, 108 S. Ct. 72, 98 L. Ed. 2d 36 (1987) (no trust found under Kentucky statute for unpaid materialman); *Georgia Pacific Corp. v. Sigma Serv. Corp.*, 712 F.2d 962 (5th Cir. 1983) (no trust found under Arkansas or Mississippi law).

Enacted in 1991, the stated purpose of the Tennessee Prompt Pay Act was "to provide for timely payments to contractors, subcontractors, materialmen, furnishers, architects, and engineers[.]" 1991 Pub. Acts, ch. 45 (Tenn. 1991). Other states for similar

6

stated purposes have comparable statutes. *See generally* John W. Hays, *Prompt Pay Acts: Recent Developments and Trends*, 22 Construction Law. 29 (2002).

Like the Michigan statute in *Selby*, Tennessee's Prompt Pay Act expressly creates a trust: "[a]ny sums . . . committed to the owner by a third party which are intended to be used as payment for improvements made to real property . . . shall be held by . . . third party in trust for the benefit and use of the contractor." TENN. CODE ANN. § 66-34-205(a). *See also Riden v. Sigler (In re Sigler)*, 196 B.R. 762, 765 (Bankr. W.D. Ky. 1996) (distinguishing *Selby* on ground that Kentucky statute nowhere expressly created a trust). The res of the trust created by the Tennessee statute is clearly defined as "any sums allocated by the owner or provided or committed to the owner by a third party." The trust arises upon the commitment of funds, exits separate from any act of wrongdoing and does not arise ex-maleficio.

As Judge Merritt discussed in *Selby*, the purpose and policy behind the statute reveal legislative intent to protect contractors beyond the typical mechanic's and materialmen's liens otherwise available. *See* TENN. CODE ANN. § 66-11-102 (lien statute, provides no trust); § 66-11-138 (misapplication of contract payments is a Class E felony).[4] Funds subject to § 66-34-205(a) are held in trust by the owner or third party for the benefit of the contractor and do not become property of the bankruptcy estate.

The Participation Agreement between Metro and Baty comes within the Prompt Pay Act because sums were "committed to" the owner by a third party. Fundamental rules of

---

[4] TENN. CODE ANN. § 66-34-304 was also enacted in 1991 as part of the Prompt Pay Act, and extends similar protections to suppliers and subcontractors that deal only with a contractor on a project: "[a]ny sums received by the contractor as payment for work, . . . supplied by the subcontractor, materialman or funisher for improvements to real property shall be held by the contractor in trust for the benefit and use of such subcontractor, materialman or funisher[.]"

7

statutory construction include: Giving nontechnical words their "ordinary and natural meaning," *Perrin v. United States,* 444 U.S. 37, 42, 100 S. Ct. 311, 314, 62 L. Ed. 2d 199 (1979); considering "not only the bare meaning of the word but also its placement and purpose in the statutory scheme," *Bailey v. United States,* 516 U.S. 137, 116 S. Ct. 501, 507, 133 L. Ed. 2d 472 (1995); and interpreting a single statutory word or provision in "a context that makes its meaning clear," *United Savings Assoc. of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 371, 108 S. Ct. 626, 630, 98 L. Ed. 2d 740 (1988).

"Commit" has numerous dictionary definitions: to give in trust or charge, to pledge, to bind or obligate, to consign to custody. Dictionary.com Unabridged (v 1.0.1) (Based on the Random House Unabridged Dictionary 2006) <http://dictionary.reference.com/browse/committed>. The most natural meaning of "committed to the owner by a third party" in TENN. CODE ANN. § 66-34-205(a) is "pledged for future use" or "obligated" by the third party. This reading distinguishes "provided" from "committed." In the context of a construction contract, reading "committed to" to mean pledged or obligated for future use is consistent with common practices and facilitates the objective of the statute—"to provide for timely payments to contractors, subcontractors, materialmen, furnishers, architects, and engineers[.]" 1991 Pub. Acts, ch. 45 (Tenn. 1991).

Section 66-34-205(a) also requires an intended use of the sum committed: "use[] as payment for improvements made to real property by virtue of a written contract between the owner and the contractor." Here, both the Participation Agreement and the Metro Ordinance unmistakably intended the sum committed by Metro to be used as payment for

8

improvements to real property. Under the Participation Agreement, Metro committed to pay Baty the lesser of 85% of the installation cost of the water main or $190,000. Baty agreed to "be responsible for all costs associated with this project not funded by Metro." The Ordinance stated that Baty agreed "to pay for all costs associated with this project not funded by Metro[.]" This language demonstrates intent that the Metro funds would be used to pay for the improvements contracted by Garney, and Baty would pay any amount not funded by Metro. In short, sums committed by Metro were intended to pay Baty for the improvements (the water main) under the contract between Baty and Garney. The statute requires only a written contract between the owner and the contractor for improvements to real property. "[B]y virtue of a written contract" refers back to "improvements made to real property." Section 66-34-205(a) applies.[5]

There is no dispute that the mains construed by Garney are located within a public right of way that extends from 31st Avenue, to Parthenon Avenue to West End Circle. Enforcement of mechanics or materialmens liens against the Project might include selling land and buildings abutting the public street that benefitted from improvements by Garney, but would not include selling the public streets under which the water mains lie. *Stegar v. Arctic Refrigerating Co.,* 14 S.W. 1087 (Tenn. 1891); see also TENN. CODE ANN. §§ 66-11-102 (work and materials); 66-11-105 (extent; property removal); 66-11-106 (buildings; lien duration) (Thomson/West 2006). Directing Baty to execute the revised documents to transfer the water main to Metro is not inconsistent with any third party rights

---

[5] To the extent Baty asserts the rights of Garney under the Prompt Pay Act have been waived by contract, either with Garney or Metro, TENN. CODE ANN. § 66-34-701 states compliance with the Prompt Pay Act "may not be waived by contract and th[is] section[] [is] applicable to all private contracts and all construction contracts with this state[.]"

9

Case 3:05-ap-00602   Doc 29   Filed 10/17/06   Entered 10/17/06 08:05:20   Desc Main
Document      Page 9 of 10

or interests in the Property, and is consistent with *Architectural Building Components v. McClarty (In re Foremost Manufacturing Co.)*, 137 F.3d 919 (6th Cir. 1998).

## CONCLUSION

Tennessee Code Annotated § 66-34-205(a) creates a statutory trust. The Participation Agreement and the Garney Construction Agreement are squarely within the statute. The funds held by Metro under the Participation Agreement are in trust for the benefit of Garney. The funds are excluded from the Baty Chapter 11 estate under *Selby*. Baty must execute the revised forms to deed the water main to Metro. Metro can then safely release its committed funds to Garney.

An appropriate order will be entered.

DATED: October 16, 2006

10

Case 3:05-ap-00602    Doc 29    Filed 10/17/06    Entered 10/17/06 08:05:20    Desc Main
Document      Page 10 of 10